FILED
Sep 21, 2021
01:12 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **CHRISTOPHER BARNES,** | ) | **Docket No. 2021-06-0176** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 800146-2021** |
| **VANDERBILT UNIVERSITY** | ) | |
| **MEDICAL CENTER,** | ) | **Judge Joshua Davis Baker** |
| **Employer.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER

---

This first standoff over a COVID-19 infection is reminiscent of a quote from Stephen King's *The Stand*, a horror story about a global pandemic: "The place where you made your stand never mattered. Only that you were there . . . and still on your feet." This Court is relieved that Mr. Barnes is here, on his feet, and able to tell his story.

At a September 1, 2020 expedited hearing, Mr. Barnes requested temporary disability benefits and alleged that he contracted COVID-19 from cleaning the hospital rooms of discharged COVID-19 patients. The Court finds he did not present sufficient evidence that he is likely to prevail on his claim for temporary disability benefits.

### Claim History

Mr. Barnes, a janitor at Vanderbilt, alleged he contracted COVID-19 from cleaning hospital rooms of discharged COVID-19 patients shortly after Christmas. Until that point, Vanderbilt had accommodated his doctor's request that he not clean those rooms because of his partner's high-risk pregnancy. After cleaning the rooms for two days, Mr. Barnes's symptoms emerged on December 30. Two days later, he tested positive for COVID-19.

Both Mr. Barnes's testimony and his supervisors' Rule 72 declarations described the circumstances surrounding his potential exposure. The week that his symptoms developed, he cleaned rooms for two days "where COVID-19 patients had been staying after those patients were discharged." He followed Vanderbilt's safety protocol: he washed

1

his hands and used sanitizer before entering and after leaving, and wore personal protective equipment (PPE), "including gloves, a gown, eye protection, and a proper mask." His manager maintained that no other employee reported an infection from cleaning these rooms.

But Mr. Barnes said he did not go anywhere other than work during the week before his symptoms manifested (December 23-30, 2020). His partner shopped for groceries; he worked from 3 p.m. to 11 p.m. and slept until noon; and his partner never got sick, implying that his exposure occurred outside his home.

Mr. Barnes said he told his supervisor, Antonio Dyson, from the outset that his exposure happened at work. Mr. Dyson sent him directly to Occupational Health without offering a panel of physicians. When Mr. Barnes told staff there that his illness was work-related, they directed him back to Mr. Dyson to complete paperwork. When he again sought help initiating a claim, Mr. Dyson told him to figure it out himself. In his declaration, Mr. Dyson denied saying this but confirmed that Mr. Barnes reported a work injury. He acknowledged, "Employee did report to me on or about January 3…that he had tested positive for COVID-19 and that he thought he might have contracted it at work."

Through a policy outside its workers' compensation program, Vanderbilt provided medical treatment for Mr. Barnes with its Occupational Health Clinic and paid him lost wages until February 27, 2021.

Teresa Overton, Vanderbilt's workers' compensation manager, explained how Vanderbilt's COVID-19 policy is unrelated to its workers' compensation program and did not trigger notice of a claim. She said Vanderbilt had "a policy where it paid any employee who tested positive . . . or who had to be quarantined . . . for a period of time that would allow for recovery . . . regardless of whether the employee's need to be out of work due to COVID-19 was work-related or not." Moreover, she contended that he "never followed VUMC's procedure for making a workers' compensation claim, which required him to complete a report on VUMC's online veritas system." So, she did not receive notice of a work-injury allegation until Mr. Barnes filed his petition for benefit determination in March. She denied the claim over lack of medical causation and notice.

When Mr. Barnes stopped receiving wages on February 27 and felt stymied from initiating a workers' compensation claim, he filed a petition on March 11 for temporary disability benefits. Vanderbilt had stopped paying his wages after a nurse at Occupational Health suggested on February 22 that he could work four hours per day.

However, that same medical record also suggested Mr. Barnes was developing pneumonia from his COVID-19 illness. It documented the following impression from his chest x-ray: "Patchy airspace opacities in the left lower lung could represent sequelae of Covid infection versus developing bacterial pneumonia. Follow-up chest x-ray in 4-6

2

weeks is recommended to ensure resolution." In fact, Mr. Barnes testified he developed "COVID pneumonia" shortly after that, and Occupational Health referred him to a specialist, who restricted him from working again until at least June.

Yet Mr. Barnes did not present a clear picture of his pneumonia diagnosis, its treatment, or his inability to work, as he did not file any medical records of treatment that occurred after early March.

Meanwhile, Vanderbilt maintained Mr. Barnes is not owed temporary disability benefits because its supervising physician at Occupational Health, Dr. Ana Nobis, determined his illness was not work-related. Dr. Nobis said that assuming he wore PPE appropriately and experienced no "known high-risk exposure," "the risk of Mr. Barnes contracting COVID-19 [at work] was less than, and certainly not greater than, his risk of contracting COVID-19 in the community at the height of the pandemic." She acknowledged that "improper use [of PPE] could have potentially increased risk." But she concluded, "I cannot say that Mr. Barnes' COVID-19 infection resulted primarily from his work at VUMC versus from exposure outside the workplace."

For his part, Mr. Barnes said Dr. Nobis never treated him, never examined him physically, and never questioned him about the circumstances of his exposure or the events leading up to his symptoms' onset.

While grateful for medical treatment and wages, Mr. Barnes expressed frustration over three points: his supervisor did not accept his report of a workers' compensation claim; he did not receive lost wages after February, when he was still disabled from working; and Vanderbilt did not permit him an opportunity to select a physician from a panel. Fortunately, Mr. Barnes recovered and no longer needs medical attention.

### Findings of Fact and Conclusions of Law

Mr. Barnes need only present sufficient evidence at this stage that he is likely to prevail at a final hearing. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2020); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at \*9 (Mar. 27, 2015).

He requested temporary disability benefits from February 27 until he could return to work in June. Vanderbilt contended Mr. Barnes is not owed those benefits because he did not give proper notice of his injury and because he cannot prove his exposure to COVID-19 occurred at work, particularly given Dr. Nobis's opinion.

*Notice*

Under Workers' Compensation Law, an employee "shall, immediately upon the occurrence of an injury . . . give or cause to be given to the employer who has no actual notice, written notice of the injury[.]" Tenn. Code Ann. § 50-6-201(a)(1).

The Court finds Vanderbilt had actual notice of an alleged injury. Mr. Dyson acknowledged that Mr. Barnes reported a work-related illness to him within days of testing positive. He knew that Mr. Barnes had a known, potential exposure to the illness at work, as he assigned Mr. Barnes to clean rooms recently vacated by COVID-19 patients, and he knew Mr. Barnes then tested positive days later.

Because Vanderbilt had actual notice, Mr. Barnes did not have a statutory duty to submit written notice. Further, he had no obligation to seek a tutorial from his supervisor on Vanderbilt's procedure for reporting a claim, nor did he have any obligation "to complete a report on [its] online veritas system."

Therefore, Mr. Barnes is likely to prevail at trial in proving that Vanderbilt received actual notice of his claim as early as January 3, when he notified his supervisor that he had tested positive for an illness he became exposed to at work.

*Medical Causation*

To prevail at a final hearing, Mr. Barnes must prove he suffered an injury caused by a specific incident or set of incidents arising "primarily out of and in the course and scope of employment," which means the employment contributed more than fifty percent in causing the injury, considering all causes. Tenn. Code Ann. § 50-6-102(14)(A)-(B).

Where an employer has presented expert medical proof that the employee's condition is not work-related, the employee must present expert medical proof that the alleged injury is causally related to the employment when the case is not "obvious, simple [or] routine." *Berdnik v. Fairfield Glade Com'ty Club*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *10-11 (May 18, 2017).

Because COVID-19 silently and unseeingly spreads, how a person contracts it is often unclear.

Here, Vanderbilt presented expert proof concerning medical causation. Dr. Nobis determined that Mr. Barnes's risk of contracting COVID-19 at work was less than his risk of contracting it in his community, assuming he wore PPE correctly. She also considered that Mr. Barnes did not report a work-related "known high-risk exposure," which presumably would involve face-to-face, prolonged contact with an infectious person.

4

The Court is presented with a rather murky causation conundrum: whether he contracted this illness during the course and scope of his employment, as opposed to in his home (from a loved one or roommate) or from his community (at a store, church, restaurant, social gathering, etc.).

While Mr. Barnes did not present expert medical proof, he cited a known and identifiable, specific encounter with COVID-19 over two days at work. No one disputes that patients infected by COVID-19 occupied the hospital rooms that he cleaned, or that he contracted this illness. Vanderbilt also recognized that cleaning these rooms presented some danger, as it provided PPE and implemented a safety protocol to mitigate his exposure risk. And Dr. Nobis recognized it, acknowledging that improper use of PPE would increase his risk of exposure.

Mr. Barnes testified he had no other known, potential exposure in his community or in his household in the week preceding symptom-onset. He became ill shortly after Christmas and testified he did not go anywhere but work from December 23 to December 30. His partner went to the store, but she did not get sick. So, he argued that the exposure that caused his illness had not happened within his household or community.

With that testimony, Vanderbilt's expert proof is of limited use, especially when considering the Appeals Board's decision in *Hawes v. McLane Company, Inc.*, 2021 TN Wrk. Comp. App. Bd. LEXIS 30, *9 (Aug. 25, 2021).

In *Hawes*, the employer provided medical care without permitting the employee a choice. As part of that care, the employee underwent a test that was performed by a technician and supervised remotely by a physician. The physician then gave an unfavorable causation opinion premised upon the test, finding "no acute pathology or change" in the employee's condition, suggesting his claim was not compensable.

Like *Hawes*, Vanderbilt's expert proof refuting Mr. Barnes's allegation of a work injury arose from its failure to follow the law. And as in *Hawes*, the facts underpinning Mr. Barnes's work-injury allegation are undisputed: he cleaned rooms permeated by the same illness he later contracted. Yet Vanderbilt funneled him directly to its Occupational Health Clinic, where it controlled and directed his treatment, including decisions concerning his restrictions, the work-relatedness of his illness, and a referral to a specialist.

Because Vanderbilt directed treatment without permitting Mr. Barnes any choice, it failed in its obligation to provide him a panel of physicians. *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(i). While "an employer has a right to investigate and deny an employee's claim based on its factual assertion that the alleged work accident did not occur as reported, or as the result of asserting an affirmative defense[,] . . . an employer's assertion that an employee has no medical evidence supporting his or her claim does not, standing alone, excuse it from [its] statutory obligations under section 50-6-204(a)(1)(A)." *Hawes,* at *9.

By failing to provide a panel, Vanderbilt effectively steered the medical care in this claim, usurping Mr. Barnes's privilege to control his choice of physician. Instead, he received care only from nurses under Dr. Nobis's supervision. She did not phsyically examine him or consider his personal account during the relevant period before his symptoms emerged. In other words, she considered and contributed weight to other causes of his infection, like community exposure, without examining him to ensure those potential exposures existed.

Because Vanderbilt eschewed its legal obligation to provide Mr. Barnes a panel of physicians, the Court refers Vanderbilt to the Compliance Program of the Bureau of Workers' Compensation to determine whether it should be assessed a civil penalty.

Still, questions remain concerning what relief the Court can provide Mr. Barnes. The answer at this time is none. At the hearing, he admitted he recovered and needs no further treatment, so providing a panel seems futile. Also, the Court cannot find that he is likely to prevail at a final hearing on temporary disability benefits because he did not present proof of his disability from working or its duration. *See Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

While Mr. Barnes testified that he developed COVID-related pneumonia and saw a specialist who restricted him from working until early June, he presented no medical records supporting this hearsay testimony. Without accompanying expert medical proof, his testimony cannot serve as the basis for an award of temporary disability benefits. The Court notes, however, that this ruling does not foreclose Mr. Barnes from presenting medical records from the specialist to support his claim for temporary disability benefits in the course of his claim.

**IT IS ORDERED** as follows:

1. The Court denies Mr. Barnes's request for temporary disability benefits and medical benefits at this time.

2. The Court refers Vanderbilt to the Compliance Program of the Bureau of Workers' Compensation for appropriate action, if any, based on Vanderbilt's failure to provide a panel of physicians as required by Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) and Tennessee Compilation Rules and Regulations 0800-02-01-.06 (1).

3. The Court sets a **scheduling hearing on Monday, November 22, 2021, at 9:00 a.m. (CST).** The parties must call (615) 741-2113 or toll-free at (855) 874-0474 to participate. Failure to call might result in a determination of the issues without the party's participation.

**ENTERED September 21, 2021.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits

1. Declaration of Teresa Overton, including attachments
2. Declaration of Antonio Dyson
3. Declaration of Troy Cole, including attachments
4. Declaration of Dr. Ana Nobis
5. Declaration of Angela Wells
6. Declaration of Christopher Barnes
7. Reasonable Accommodation Healthcare Provider Form
8. Medical Records

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing, decision on the record
4. Employer's Response to Employee's Request for Expedited Hearing
5. Employer's motion to Amend DCN
6. Employer's motion for evidentiary hearing
7. Order on motion to amend and motion for evidentiary hearing entered June 22, 2021

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on September 21, 2021.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Christopher Barnes, Employee | | | X | chrisbarns93@icloud.com |
| Nate Cherry, Employer's Attorney | | | X | ncherry@howardtatelaw.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

   If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*